Good morning, riders. Before we start, I'd like to reserve two minutes for a little please. May it please the court, I am David Glasser. I represent Alan Klukey, who was the plaintiff below. We are here with the benefit of having had this case appear twice before in this court for some clarification of legal points. I think it's a simple enough case. I'll refer to the two prior appeals as Klukey 1 and Klukey 2. Klukey 1 was very simple. Klukey asserted that he had a contract with the town, which gave him recall rights in the event he was laid off. Klukey filed the Section 1983 claim, claiming that civil rights were violated because the town simply never gave him a notice or any type of hearing to say that the jobs were available and that he wouldn't be getting them. The summary judgment challenged whether 1983 could even apply to a recall provision. Klukey 1 held that it could. I think you can probably presume we're familiar with Klukey 1 and Klukey 2. In fact, I think some of us. Okay. In that case, Judge, I'm much more comfortable answering questions than making a speech, but I'll keep going. Could you at least get to who has the burden with this condition preceding? Condition precedent. I really struggled with this, and my ultimate understanding is neither party has a burden of proof. I believe what happens is parties come in with competent evidence of the intentions of the parties at the time the contract was made. And from that body of competent evidence presented by both sides, the jury then tweezes that evidence apart and makes a decision about what the intent of the parties was. We never had that competent evidence presented in this case. What happened here was instead of the contract was nine years old, I believe, at the time it got to trial, the town couldn't find any of the people who negotiated the contract, except for one of the selectmen who didn't have a good recall of what happened. We couldn't find any of the union people. So there was no way to provide evidence of the mutual intention of the parties. Kluge never read the contract, so he couldn't provide any evidence admissible or not of what that contract meant. The town provided three witnesses who said, well, I was around then. Assuming we think that the evidence presented was insufficient to show the party's intent at the time the agreement was made, and given our holding in Kluge II that there was ambiguity and if there's no evidence to present, then what? Then there is case law from Maine and in Kluge II that case law was recognized as, I think, the ultimate resolution of the case. In that event, which is the district court then has to apply rules of construction again to the ambiguous language to resolve it. And the rule of construction we've pointed to is that a condition precedent would cause a forfeiture, a Kluge's forfeiture of a contract right. And there is in Maine case law that avoids that type of construction. So a contract is to be construed so as not to create a forfeiture of a contract right. Didn't one of the town officials testify that they'd seen this type of provision in other agreements before? I'm not sure how many, but it had been in place in the town for years that another dispatcher who had been recalled and wanted to be recalled had in fact registered their address upon being dispatched. And so you have sort of a, doesn't that give plausibility at least enough to be a smidgen of evidence that this was a clause that was meant to be implemented in your client's case the same way it had been implemented in someone else's case? The town manager who gave the testimony that you just mentioned, Judge Kayada, was not able to say that this exact language appeared. She was simply able to say that, yeah, these were all the provisions. Well, she wasn't able to say how many of the prior contracts had the exact language, but she didn't disavow that the same language was in other contracts. I might be confusing her in-court testimony with a deposition. I can't state that clearly at this point and answer your question fairly. I also don't know that there's any case law which says that one instance of something happening creates a course of feelings between the parties. In this case, the gentleman who filed his address with the court might simply have interpreted the ambiguity one way, but that doesn't speak to the intent of the parties at the time the contract was made. I think the course of dealings provision is the course of dealings that happens between the parties before the breach is committed. The fellow filed the letter with the town giving his name and address after Kluge was already in motion. So I don't know that that bears on the intent of the witnesses. Also, another problem that we really have with this is that what the district court essentially did was hold a post-deprivation hearing. Had Kluge had noticed an opportunity to be heard on whether or not he should get a particular job, the question of how the town interprets the contract and how Kluge interprets the contract, at least through his attorney, is hashed out between the town and Kluge at that stage. The Constitution provides that remedy so that both sides can be apprised of each other's position in the need of further litigation. And so that the town, I believe this comes from Watermill, so that the town can make a decision that doesn't result in a mistake. And I think that we had a clear mistake here by entertaining issues outside of the resolution of ambiguity, outside the notice provision and possibly Matthew's inquiry. Did you request an instruction from the court that if it was ambiguous, it should be construed against the town? That, I believe, is not the way, Your Honor. I believe if the jury were to come back with a finding that the contract is still ambiguous then the resolution of the contract is again a matter of law for the court. So I believe my memory today is that I did not create that instruction. So then your basic position is this never should have gone to the jury in the first place? Correct. Not the question of whether Kluge was limited to a certain position because it was union or non-union, which first appeared at the trial. I mean, when we first saw this case in Kluge 1, the situation was that the town was saying that the provision that says that police dispatch functions are separate from dispatch functions has two different meanings as long as pressed in the 12B6 motion, the decision in Kluge 1 recites that. That changed when the issue got to the Court of Appeals in Kluge 1. Then we get to the trial and this whole new theory evolves that it's really about whether a position is a union position and not a police function or a dispatch function. And that should have been hashed out in a print deprivation hearing. Thank you. May it please the court, Fred Koslow for the town of Camden. And there's one thing that I've learned from this case is that victory is often short-lived. This will be the third time we're here. I'm going to keep my comments very short today because the court in ruling on the motions, post-trial motions, really articulated all the evidence, how the court viewed it. They went through the law. They went through the facts of the case. And so that memorandum of decision on the post-trial motions really covers, I think, all the arguments that Mr. Glasser has made for you today. I know today that he has appreciated the subtle distinction between proving a condition precedent and proving the intention of a condition precedent. And it is the latter that we were there to decide. The language was capable of being, if it was intended as a condition precedent, the language was sufficient. So we're not really there to prove or prove the intention of the parties. That's why we got into the extrinsic evidence. He asked this court to accept as a matter of fact that there is no evidence available. And he keeps talking about you have to show mutual intent. Well, we presented evidence before the court. He presented none. He asked to accept as a fact no evidence was available to him. But yet, the way we determined the townspeople, they were signatories to the agreement. There were union people who signed that same agreement. Were there ways to go back? We don't know. That's his obligation to come and present evidence. And by his own acknowledgment, he presented none with one exception. And that exception is important. In his closing arguments, he said to the jury, well, what evidence does Mr. Kluge have to prove his case? Well, ladies and gentlemen, he has the contract. And he used the contract, and he asked the jury to determine simply on the basis of the language of the contract that his position was the correct one. And if it's okay for him to ask the jury to use the contract in and of itself to render a decision, then it's certainly fair that they use the contract to render a decision adverse to him. The prior decision, Kluge 2 of this court, kept referring to the party's intention and proof of the party's intention. He then went back at trial, and you put on evidence of your client's intention. Technically, though, shouldn't Kluge 2 and what you presented at trial have referred to communicated or manifest intention to the other party? Because normally in a breach of contract case, we really don't care, generally speaking, what someone's secret intention was. We only care what they communicated to the other side. And as I understand it, there was no evidence here about any communications, direct or indirect, sign language or anything between the parties regarding this issue. And I thought about that. And when you use the word, and I agree with you, the court looked at secret intention. Well, a secret implies a reason to not want to communicate. If I had dinner last night and I don't mention what I had today, that doesn't make it a secret because I have no reason not to disclose it. So you're arguing if the jury believed your client's three of them testified that that's how they interpreted a clause, that was their intention at the time, that the jury could but need not, but it could infer that that would have been what the discussion was? Not every term, especially a large contract, not every term in a contract is discussed. Some terms may be equally clear to both sides so that there is, by the silence, merely is a manifestation of assent to those particular terms. And so the fact that it's not specifically discussed every single thing, people may read the agreement, both sides read the agreement. There are those issues for which they believe there may be differences of opinion and then there is there not. But there is no evidence here that this was some kind of secret intention, you know, none at all. And that's what, you know, I understand that if you're withholding something affirmatively back, I know a way to interpret this and I'm not going to tell you, but that's not the case here. Well, it doesn't have to be secret. Normally we would say unstated intention is irrelevant. But if if by reading the terms of the agreement, both sides come to some mutual understanding with or without words, some things are are clear enough. I know the court found it ambiguous. The jury may have disagreed. So you're saying in effect, it's as if the contract had a phrase in Russian that was therefore ambiguous to the court and the jury because they didn't know what it meant. And then you put on your client who testified, I speak Russian. And that's what this word means to me. We could therefore infer that that was the intent of the parties. No, I think the intent of the parties, many times in a contract case, people don't read the agreement the same way. But some things, as I said, if both parties read it and feel no discussion is necessary, then there is a sort of mutual dissent by silence in a contract because every single position is not is not discussed out. Why? Because there's the language right there. Now, I understand that. Yeah, but in this case, though, we we said it was ambiguous. And I don't recall seeing any testimony, any evidence whatsoever that the parties agreed that it wasn't ambiguous at the trial. So how could the jury have reached that conclusion? Course of dealing. Number one, when the town manager said, this is how I've handled it. This is how I've handled it before. That's, you know, the even only one instance, though. But that would go to wait. You know, she said the other town official said he had reviewed the contract numerous times over 20 years. And that was his understanding of the contract. He refreshed his recollection. There was one instance only over that 20-year period. And wasn't that post-Kluge? No. Well, we're talking about two different things here. We're talking about Roberta Smith, who was the town manager, said, I'm responsible for administering this. I've been a town manager for many years. These are how these things are administered. That's course of dealing. I just want to clarify, because I'm not clear on the record. Wasn't there testimony that this had never come up before except in one other instance? So when you say administer, administer may be in theory, but you would have a lot stronger case if there was an administration in practice. Yeah, certainly I would have a stronger case if there was a document that said, you know, we had the evidence that we have, and, you know, they gave the defendant the burden of proof. The defendant met the burden of proof. And it really, those things that happened of saying that was my understanding at the time of the agreement, I don't think you have to put on both sides. I think it's incumbent on the appellant to put on some evidence that, no, that's not right. Why would that be so if the question is what was the agreed intent of the parties or shared intent of the parties? Why would, I mean, we're going back to earlier questions, but why would evidence of unexpressed interpretation satisfy that? Well, if it's unexpressed, if that's their understanding and there's no testimony from the other side, I mean, they have to put on something to say, well, no, that's not the understanding. I understand there was not a lot of evidence in this case. I'm fully aware of that, that there's not a lot, but it goes really to weight rather than to admissibility. And at the stage we're on now, the jury was entitled to put whatever weight, even if it was just, as someone suggested, a smidgen of evidence, it's more than no evidence, and the jury determines that weight and never loses sight of it. Well, the smidgen, I thought, was in reference to course of dealing as opposed to these unexpressed interpretations. Well, we have both, and you're right. I'm just trying to understand the relevance of the unarticulated interpretations. And I'm trying to understand what the course of dealing has been over 20 years, aside from one instance that plaintiff's counsel said was post the initiation of this lawsuit that was in the newspapers up there. Okay, post, if you – Just look at you, just clarify what the record is. Is it just one instance? Post. Well, there are two things. One is post instance, but if that person is responsible, let's say in the contract you have to do X, Y, Z. Could you clarify whether it's more than one, or if it's just one, is it post this lawsuit? One administering of this contract post layoff, not post lawsuit. So that's one. And the other was the other town official who said he had looked at the documents and reviewed them many, many times, and his interpretation was that. I still think they have to come up with some, but there is some course of dealing. Both the town managers said, I've looked at other contracts, I've looked at this one, this is how it was handled. The subsequent performance after the contract is entered into is still course of dealing. So, yes, post Kluge layoff, another person submits their name and address, that kind of thing. How you administer that, what your belief was of how it should be administered. And lastly, of course, before I close, is the contract itself. When the plaintiff says that's the evidence, that's the evidence that we have, a contract, just because the court deemed it ambiguous, a jury through their common experience, through their understanding, may have resolved that ambiguity. And I don't think, as the judge said in the case, the jury may have, quote, in fact, and highlighted, determined that they didn't need that for the ambiguity. Thank you. Just to clarify, I don't want to mislead the court. The gentleman, the other dispatcher who filed his address and name with the town, that happened after Kluge was denied his due process, but before the lawsuit happened. So why wouldn't it then be relevant? In other words, there's no reason why we shouldn't think that it was ordinary in course administration in another instance undercutting any notion that it was done just to develop evidence for this case. I think, number one, the word course of dealings means that there is a reliable chain of events that one could point to that gives the evidence trustworthiness. Well, it's a short course here, admittedly. How do you deal with it? This is a collective bargaining agreement. Yes. Usually, if the union thinks an employee is getting the shaft under a collective bargaining agreement, the union usually does something. Yes, and the union disappeared in this case, which is why we couldn't find anybody from the union to come testify. So it's no longer a unionized workplace? It is. Different union. There was a change in unions. But the collective bargaining agreement was in force on the day your client was not notified. That's correct. And when your client came forward, wasn't the collective bargaining agreement still in force? Yes. So there was a union, there was a collective bargaining agreement. What difference does it make that it wasn't the union around in the first place? It seems the subsequent union must not have interpreted the clause in the same way. Well, I wouldn't say that, Your Honor. I'd have to go outside the judicial record to explain why that happened. No, we don't need to. But we can sometimes infer from an absence of evidence. We can draw references. Well, except that the law which we cited in the blue brief is clear. There has to be an expressed intention between the parties at the time the contract is entered into. That didn't exist here. Thank you both. Thank you.